UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
BENJAMIN VALDES, individually and on behalf of     Civil Action No.
all others similarly situated,

                        Plaintiff,

     -against-

METROPOLITAN TRANSPORTATION
AUTHORITY and NEW YORK CITY
TRANSIT AUTHORITY,

                       Defendants.
---------------------------------------------------------------X

## COLLECTIVE ACTION COMPLAINT

Plaintiff, BENJAMIN VALDES, individually and on behalf of all others similarly situated (hereinafter, "Plaintiff"), as and for his Collective Action Complaint against Defendants, METROPOLITAN TRANSPORTATION AUTHORITY and NEW YORK CITY TRANSIT AUTHORITY (hereinafter, "Defendants"), respectfully alleges as follows:

### JURISDICTION AND VENUE

1.    Plaintiff brings this action under the Fair Labor Standards Act (hereinafter the "FLSA"), 29 U.S.C. §§ 201 *et seq.* to recover unpaid overtime compensation and for other relief. This action is brought as a collective action pursuant to 29 U.S.C. §216(b).

2.    Jurisdiction over Plaintiff's FLSA claims is based upon Section 216(b) of the FLSA, 29 U.S.C. § 216(b), and upon 28 U.S.C. § 1331.

3.    Venue in this district is appropriate under 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to these claims occurred in this judicial district.

1

## PARTIES

4.      Plaintiff has been employed by Defendants as a subway train operator from on or about March 25, 2013 until the present. Since April 2017, Plaintiff has been assigned to several subway lines, and has operated subway trains on the "E", "M", "N", "L", and "7" subway lines throughout Queens, Brooklyn, and Manhattan.[1]

5.      Upon information and belief, Defendant Metropolitan Transportation Authority (hereinafter, "MTA") is a public benefit corporation, and according to the New York State Department of State, Division of Corporations, Defendant MTA is a domestic government entity duly organized and existing under and by virtue of the laws of the State of New York.

6.      Upon information and belief, Defendant New York City Transit Authority (hereinafter, "NYCTA") is a public benefit corporation, and according to the New York State Department of State, Division of Corporations, Defendant NYCTA is a domestic government entity duly organized and existing under and by virtue of the laws of the State of New York.

7.      Upon information and belief, Defendants MTA and NYCTA maintain their headquarters at 2 Broadway, New York, New York 10004.

8.      According to Defendant MTA's website, the MTA is North America's largest transportation network, serving a population of 15.3 million people across a 5,000-square-mile travel area surrounding New York City through Long Island, southeastern New York State, and Connecticut.

---

[1] Plaintiff is an "Opt-In" Plaintiff in the action entitled *Finnigan v. Metropolitan Transportation Authority, et al.*; 19-CV-0516 (PKC)(RER) (the "Finnigan Action"), which has been conditionally certified for those subway train operators who have been assigned to the "7" line from October 9, 2016 through the present. As such, Plaintiff does not assert claims, either individually or for similarly situated "7" line subway operators, in this lawsuit for those periods of time in which Plaintiff was assigned to the "7" line subway.

9.      According to the MTA's website, Defendant NYCTA is an operating agency of the MTA.

10.     According to the MTA's website, Defendants MTA and NYCTA operate twenty-seven (27) subway lines, six-thousand four-hundred thirty-five (6,435) subway cars, and four-hundred seventy-two (472) subway stations, and transport an estimated 2.355 billion passengers annually throughout Manhattan, Brooklyn, Queens, and the Bronx.

11.     Upon information and belief, Defendants jointly employed Plaintiff and all other similarly situated employees as subway train operators at all times relevant to this action. Each Defendant had and continues to have substantial control over Plaintiff and all other similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

12.     Upon information and belief, Defendants were and continue to be part of a single integrated enterprise that jointly employed Plaintiff and all other similarly situated employees.

13.     Upon information and belief, Defendants' operations were and continue to be interrelated and unified.

14.     Upon information and belief, at all relevant times, Defendants MTA and NYCTA have shared common management and have been centrally controlled.

15.     Upon information and belief, at all relevant times, Defendants MTA and NYCTA maintained control, oversight, and direction over Plaintiff and all other similarly situated employees, including timekeeping, payroll, and other employment practices applied to them.

16.     Defendants MTA and NYCTA are covered employers within the meaning of the FLSA, and, at all relevant times, employed and/or jointly employed Plaintiff and all other similarly situated employees.

## FACTS

17.     At all times relevant to this action, Plaintiff was employed as a subway train operator for the benefit of and at the direction of Defendants.

18.     From on or about April 10, 2017 until the present (the "relevant period of employment"), Plaintiff's primary duty was to operate subway trains throughout Queens, Brooklyn, and Manhattan.

19.     During this time, Defendants have paid Plaintiff an hourly rate of pay.

20.     During this time, Defendants have paid Plaintiff via direct deposit on a bi-weekly basis.

21.     During this time, Plaintiff was scheduled for and generally received a lunch break.

22.     During this time, with the exception of the claims made in this lawsuit, Plaintiff has generally been paid overtime compensation when he earns it.

23.     From April 10, 2017 until on or about June 24, 2017, Plaintiff was assigned to the "N" subway line, which operated between the Ditmars Boulevard-Astoria subway station and the Stillwell Avenue-Coney Island subway station.

24.     During this time, Plaintiff worked five (5) days per week with Thursday and Friday off. Plaintiff's schedule was Sunday from 5:38 p.m. until 1:24 a.m., Monday, Tuesday, and Wednesday from 5:16 p.m. until 1:24 a.m., and Saturday from 4:58 p.m. until 12:44 a.m.

25.     From on or about June 25, 2017 until on or about November 4, 2017, Plaintiff was again assigned to the "N" subway line.

26.     During this time, Plaintiff worked five (5) days per week with Thursday and Friday off. Plaintiff's schedule was Sunday from 5:08 p.m. until 1:04 a.m., Monday, Tuesday, and Wednesday from 5:16 p.m. until 1:24 a.m., and Saturday from 4:58 p.m. until 12:44 a.m.

4

27.     From on or about November 5, 2017 until on or about June 9, 2018, Plaintiff was assigned to the "E" and "M" subway lines.

28.     The "E" subway line operated between the Parsons Boulevard-Archer Avenue subway station and the World Trade Center subway station. The "M" subway line operated between the Continental Avenue-Forest Hills subway station and the Metropolitan Avenue-Middle Village subway station.

29.     During this time, Plaintiff worked five (5) days per week with Wednesday and Thursday off. Plaintiff's schedule was Sunday from 8:49 a.m. until 4:41 p.m. on the "E" subway line, Monday and Tuesday from 6:17 a.m. until 2:24 p.m. on the "M" subway line, Friday from 9:10 a.m. until 5:10 p.m. on the "M" subway line, and Saturday from 9:15 a.m. until 5:11 p.m. on the "E" subway line.

30.     From on or about June 10, 2018 until on or about April 13, 2019, Plaintiff was again assigned to the "E" and "M" subway lines.

31.     During this time, Plaintiff worked five (5) days per week with Friday and Saturday off. Plaintiff's schedule was Sunday from 5:17 p.m. until 1:17 a.m. on the "E" subway line, and Monday through Thursday from 5:08 p.m. until 1:09 a.m. on the "M" subway line.

32.     From on or about April 14, 2019 until on or about November 2, 2019, Plaintiff was assigned to the "L" subway line, which operated between the 8th Avenue-14th Street subway station and the Rockaway Parkway-Canarsie subway stations.

33.     During this time, Plaintiff worked five (5) days per week with Sunday and Monday off. Plaintiff's schedule was Tuesday through Friday from 4:39 p.m. until 12:31 a.m. and Saturday from 4:30 p.m. until 12:32 a.m.

34.     The start times of Plaintiff's shifts are known as the "report" time and the end times of his shift are known as the "clear" time.

35.     During the relevant period of Plaintiff's employment, regardless of which subway line Plaintiff was assigned, Defendants considered Plaintiff's shift to be over when his train was scheduled to "clear" the final stop of his route, regardless of what time the train actually arrived.

36.     During the relevant period of Plaintiff's employment, regardless of which subway line Plaintiff was assigned, Defendants only paid Plaintiff for the hours he worked between his report time and his clear time.

37.     Defendants consider subway trains to have arrived (or cleared) when the train passes through a "switch" leading up to the subway platform.

38.     However, it takes three to five (3 - 5) minutes from the time a subway train passes the "switch" to the time it comes to a complete stop at the subway platform. Once Plaintiff brings the train to a complete stop, it is his responsibility to (1) "dump the train," meaning to open the doors and allow the passengers to disembark, (2) reset all of the train controls for the next, oncoming operator, (3) secure the train's operating cabin, and (4) report to the main office. Additionally, Plaintiff is frequently required to inspect the length of the subway train to ensure that no passengers remain onboard and to ensure the train's cleanliness. These additional tasks take seven to ten (7 – 10) minutes to complete each shift.

39.     In total, Plaintiff has worked an additional ten to fifteen (10 – 15) minutes of compensable work-time each shift for which he was not paid.

40.     During the relevant period of Plaintiff's employment, Defendants have failed to compensate Plaintiff for this work at a rate of one and one-half times his regular rate of pay during weeks in which Plaintiff worked in excess of forty (40) hours a week.

6

41.     Upon information and belief, Defendants maintain extensive time records detailing when every subway train arrives at every subway station throughout New York City. As such, Defendants are in possession of records that indicate the precise times that their subway trains pass the "switch" at the end of their train operators' daily shifts.

42.     Defendants require Plaintiff, and all of their subway train operators, to sign in at the beginning of their shifts.

43.     Defendants do not require Plaintiff, or any of their subway train operators, to punch out, clock out, or sign out at the end of their shifts if their shifts exceed eight (8) hours.

44.     Defendants do not maintain accurate time records of the actual time Plaintiff, or any of their subway train operators, worked each shift.

45.     Defendants have constructive and/or actual knowledge that Plaintiff and the other subway train operators were working, and continue to work, these additional minutes every shift. Indeed, Defendants have been sued by the "7" line subway operators and continue to engage in the same unlawful wage and hour scheme alleged herein.

46.     Defendants maintain a biometric time keeping system known as "Kronos" throughout the NYC subway network which would allow subway train operators to clock in and out of their daily shifts; however, Defendants do not allow any of their subway train operators to use the Kronos system because the additional ten to fifteen minutes of work performed by subway train operators at the end of their shifts would cost them a significant amount in overtime compensation.

47.     In fact, Defendants posted a bulletin on or about November 14, 2019 directing the vast majority of their work force to beginning using the Kronos biometric system; however, the subway operators were explicitly forbidden to use it to report their hours worked each day.

48.     Instead, Defendants have made it exceptionally difficult for their subway train operators to report this time worked, and when it is reported, Defendants' supervisors routinely refuse to process the subway train operators' requests for overtime payment.

49.     During the course of Plaintiff's employment, Defendants have employed hundreds of other subway train operators on the "E", "M", "N", and "L" subway lines.

50.     Defendants subjected, and continue to subject, all of these train operators to the same illegal practices and policies as Plaintiff herein, and the same illegal practices and policies alleged by the "7" line subway operators in the Finnigan Action.

51.     Through their employment, Plaintiff and the other subway train operators have not been exempt from the overtime provisions of the FLSA.

52.     Defendants managed Plaintiff and the other subway train operators' employment, including the amount of overtime worked.

53.     Defendants dictated, controlled, and ratified the wage and hour and all related employee compensation policies.

54.     Defendants were aware of Plaintiff and the other subway train operators' work hours but failed to pay them the full amount of wages to which they were entitled for this work time under the law.

55.     Defendants' failures to pay proper wages in a timely manner were made and continue to be made without good faith, willfully, and with a reckless disregard for Plaintiff and other subway train operators' rights, and Plaintiff and other subway train operators have been damaged by such failures.

## COLLECTIVE ACTION ALLEGATIONS

56.     Plaintiff, individually and on behalf of all similarly situated current and former subway train operators of Defendants, including its subsidiaries and affiliated companies, brings this action as a collective action under the FLSA to recover, *inter alia*, unpaid overtime compensation owed to Plaintiff and all other similarly situated employees.

57.     Defendants' failure to pay Plaintiff and all other similarly situated employees overtime compensation for the unpaid time at the end of their daily shifts has violated the FLSA.

58.     As a result of these unlawful practices, Plaintiff and the similarly situated employees have suffered, and continue to suffer, a loss of wages.

59.     Plaintiff seeks to proceed as a collective action pursuant to 29 U.S.C. §216(b) on behalf of himself and the following class of persons:

> All subway train operators who worked for Defendants in New York City on the "E", "M", "N", and "L" subway lines at any time from three (3) years prior to the filing of this action to the entry of judgment in this action who give their consent, in writing, to become "Opt-In" Plaintiffs (hereinafter, the "FLSA Class").

60.     Plaintiff and other members of the FLSA Class are similarly situated inasmuch as, *inter alia*, they were required to work between ten and fifteen minutes of uncompensated work at the end of their daily shifts without being paid proper overtime compensation.

61.     Additionally, in the sworn Declaration of Albert Culler (General Superintendent, Transportation Operations, NYCTA), submitted by Defendants in Opposition to the Motion for Conditional Certification in the Finnigan Action, Mr. Cullen admitted that subway operators throughout New York City are similarly situated in that they (1) are subject to the same collective bargaining agreement that governs the employment relationship between the subway operators and Defendants; (2) pick their schedules and assignment based on a seniority system; (3) are subject to the same reporting policies at the beginning of their shifts, including reporting fifteen (15)

minutes prior to their first run, signing in at the dispatch office, reading the bulletin board, and receiving updates for the immediate shift; (3) are responsible for bringing the train to a complete stop at the end of their shift, dumping the train, setting the train's controls, and reporting to the dispatch office; (4) receive an hourly rate of pay; (5) are subject to the same meal break policies; and (6) are required to complete and submit burdensome Exception Claim Forms whenever their train does not arrive on time at the end of their shifts (i.e. "Operators complete Exception Claim Forms all of the time."), rather than simply using the biometric time keeping system to track their hours.

62.     Moreover, Plaintiff and the FLSA Class are subject to the same unlawful practices and policies as the FLSA Collective in the Finnigan Action, which has already been conditionally certified by the Eastern District of New York as being similarly situated to each other.

63.     Defendants have known that Plaintiff and the FLSA Class have performed work that has required overtime compensation. Nonetheless, Defendants have operated under a scheme to deprive Plaintiff and the FLSA Class of overtime compensation by failing to properly compensate them for all time worked.

64.     Defendants' conduct, as alleged herein, has been willful and has caused significant damage to Plaintiff and the FLSA Class.

**COUNT I**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**29 U.S.C. § 201 *ET SEQ*.**
**FAILURE TO COMPENSATE FOR OVERTIME**

65.     Plaintiff reasserts and realleges the allegations set forth in each of the above paragraphs as though fully set forth herein.

66.     The FLSA regulates the payment of wages by employers whose employees are "engaged in commerce or engaged in the production of goods for commerce, or are employed in

an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1).

67.     Plaintiff and the FLSA Class was and is entitled to overtime pay as required by the FLSA because they were and continue to be employed by an enterprise engaged in commerce.

68.     Defendants were and are subject to the overtime pay requirements of the FLSA because each Defendant is an enterprise engaged in commerce.

69.     At all times relevant to this Complaint, Defendants had, and continue to have, employees, including Plaintiff and other subway train operators, operate machinery and equipment that has moved in interstate commerce.

70.     Upon information and belief, the gross annual volume of sales made or business done by each Defendant for the years 2019, 2018, and 2017 was not less than $500,000.00.

71.     At all times relevant to this action, Plaintiff and the FLSA Class were entitled to the rights, benefits, and protections granted by the FLSA, 29 U.S.C. § 207, *et seq*.

72.     Section 207(a)(1) of the FLSA states that an employee must be paid overtime, equal to at least one and one-half times the employee's regular rate of pay, for all hours worked in excess of forty (40) per week.

73.     By the above-alleged conduct, Defendants have violated the FLSA by failing to pay Plaintiff and the FLSA Class overtime compensation as required by the FLSA.

74.     Section 13 of the FLSA, 29 U.S.C. § 213, exempts certain categories of employees from the overtime compensation requirements set forth in Section 207(a)(1) of the FLSA.

75.     However, none of the Section 13 exemptions apply to Plaintiff or the FLSA Class because they have not met the requirements for coverage under the exemptions.

76.     Defendants have acted willfully and either knew that their conduct violated the FLSA or have shown reckless disregard for the matter of whether their conduct violated the FLSA.

77.     Defendants have not acted in good faith with respect to the conduct alleged herein.

78.     As a result of Defendants' violations of the FLSA, Plaintiff and the FLSA Class have incurred harm and loss in an amount to be determined at trial, along with liquidated damages, attorneys' fees and costs of litigation, pursuant to 29 U.S.C. § 216(b).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, by and through his attorneys, Neil H. Greenberg & Associates, P.C., demands judgment against Defendants, jointly and severally and in favor of Plaintiff and the FLSA Class, for a sum that will properly, adequately, and completely compensate Plaintiff and the FLSA Class for the nature, extent, and duration of the damages, costs of this action, and as follows:

A.     Declare and find that Defendants committed one or more of the following acts:

    1.     Violated provisions of the FLSA by failing to pay overtime compensation to Plaintiff and the FLSA Class;

    2.     Willfully violated the provisions of the FLSA;

B.     Award compensatory damages, including all overtime compensation owed, in an amount according to proof;

C.     Award liquidated damages under the FLSA;

D.     Award post-judgment interest at the applicable rate;

E.     Award all costs and attorney's fees incurred in prosecuting this action; and

F.      Provide such further relief as the Court deems just and equitable.

Dated: Massapequa, New York
       April 10, 2020

Neil H. Greenberg, Esq.
Neil H. Greenberg & Associates, P.C.
*Attorneys for the Plaintiff*
4242 Merrick Road
Massapequa, New York 11758
Tel: 516.228.5100
nhglaw@nhglaw.com

13

**FAIR LABOR STANDARDS ACT CONSENT FORM**

I, the undersigned, consent to be a party in ***Valdes v. Metropolitan Transportation Authority, et al.*** in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. section 216(b).

Dated: Massapequa, New York
       March 25, 2020

                             Benjamin Valdes